UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD KEELS,
        Plaintiff,

vs.                            CIVIL NO. 07-11677

MICHAEL J. ASTRUE,          DISTRICT JUDGE BERNARD A. FRIEDMAN
          Defendant,        MAGISTRATE JUDGE STEVEN D. PEPE.
_____/

## REPORT AND RECOMMENDATION

**1.**    **Background**

       Plaintiff, Howard Keels, brought this action under 42 U.S.C. §405(g) to challenge the

Commissioner's final decision that he was not entitled to Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act.  Plaintiff and Defendant filed motions for summary

judgment.  Both motions have been referred to the undersigned pursuant to 28 U.S.C. §

636(b)(1)(B) and (C).  For the following reasons, **IT IS RECOMMENDED** that the Plaintiff's

motion for summary judgment be **DENIED** Commissioner's motion for summary judgment be

**GRANTED**.

**A.**    <u>**Procedural History**</u>

       Plaintiff, Howard Keels, applied for DIB in February 2004, alleging disability since July

7, 2003, due to carpal tunnel syndrome and a right shoulder impairment (R. 44, 58).  Plaintiff's

application was denied on July 23, 2004 (R. 36-40). Plaintiff filed a timely review and requested

a hearing.  Plaintiff appeared before administrative law judge ("ALJ") Joel G. Fina for a hearing

on September 10, 2004 (R.161).  ALJ Fina issued his decision denying benefits on October 2,

2006 (R. 18-23).  The Appeals Council denied review in March 2007 (R. 5-7).

**B.**    **Background Facts**

**1.**    ***Plaintiff's Hearing Testimony and Statements***

Plaintiff was 45 years old at the time of the hearing (R. 22, 166).  He graduated from high school, and took a couple of semesters of college.  Plaintiff cares for his personal needs and performs light chores including cooking and laundry, although he occasionally drops items (R. 173-76).  He has difficulty picking up small objects with either hand, but he is able to pick up pens and cigars (R. 182).  He drives short distances, attends church where he sings in the choir, and collects rent on a couple of rental properties he owns (R. 174, 180, 184).

Plaintiff feeds and walks his dogs and can go half a mile before stopping to rest (R. 65 & 70).  He used to play golf two to three times a week but now plays only 2-3 times a month.  He also plays cards, pool and dominos (R. 65, 68).  He stated that he could lift ten to fifteen pounds, sit for two or three hours before needing to stretch, and stand for forty-five minutes (H. 177-78).  He naps for an hour or two "pretty much every day," and sits with his legs elevated for three to four hours a day (R. 187).

Plaintiff has some difficulty climbing stairs due to foot and knee pain, but his knee pain is a long-time problem attributed to his rapid growth as a child (R. 178).

Plaintiff worked at Delphi Automotive from April 27, 1977, until June 29, 2003 (R. 167).  Most recently, he worked at Delphi as an industrial truck operator which required that he lift 35-40 pounds (R. 169).  He stopped working due to pain and numbness in his hands and his right shoulder (R. 168, 171).  He has not used power, vibrating tools since that time (R. 183).

Prior to working as a truck driver, Plaintiff worked at Delphi as a job setter for approximately 10 years (R. 169).  This job required that he lift 50-60 pounds.  Plaintiff also

worked for 8 years as a material handler removing parts from an injection molding machine (R. 170).

Since retiring in July 2004 (R. 172), Plaintiff has been unable to work at any other job as doing so hurt his hand and prevented him from sleeping (R. 171).  It was for this reason that he underwent surgery three times.  The surgeries improved Plaintiff's numbness, but he still has trouble with his grip and reaching overhead.

He takes Nexium for acid reflux and both Neurotonin and Ultracet for pain which make him drowsy (R. 184, 186).  Doctors would like to perform carpal tunnel surgery on his left hand (R. 185).

### 2.    *Medical Evidence*

On July 8, 2003, Jeffrey R. Levin, M.D., noted that Plaintiff had been diagnosed with carpal tunnel syndrome 15 years prior and at that time was given work restrictions including no lifting greater than 30 pounds (R. 96-98).  Plaintiff stated that he had bilateral right hand pain extending up his arm, right shoulder pain and pain in his left foot.  Dr. Levin noted that Plaintiff had pain in the AC joint, no limit of abduction, positive Tinel's and Phalen's signs at both wrists, thenar and hypthenar weakness at both wrists, positive Tinel's signs in both elbows, mild weakness with dorsiflexion and plantarflexion at the lower extremities, ankle jerks are symmetric and intact, knee jerks are normal, and he is able to heel and toe tandem gait without difficulty (R. 97-98).  Dr. Levin's impression was bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome, right rotator cuff arthritis and/or pathology and probable tarsal tunnel syndrome in the left foot (R. 98).   He also noted that there are some "supraspinatus and

subacromial changes" suggesting either chronic tendonopathy and bursitis or a small full thickness non acute rotator cuff tear (R. 99-100).

An MRI conducted on August 7, 2003, showed degenerative changes at "C6-C7 with moderate bulging of the annulus and bilateral uncovertebral hypertrophy narrowing exit formina" (R. 99).

On September 10, 2003, Dr. Levin noted that an MRI showed some degenerative changes at C5-6 with neural stenosis bilaterally (R. 95). Dr. Levin gave Plaintiff Motrin, Seroquel and Neurontin 400 mg three times daily, and planned to see him after outside evaluations were conducted.

On November 25, 2003, Jerome V. Ciullo, M.D., examined Plaintiff making the following clinical impression: right shoulder, AC joint arthritis, rotator cuff tendinitis due to bone spurs and question of underlying instability (R. 103). Dr. Ciullo noted that surgery was medically indicated for the right shoulder, and that it would remove bone spurs, open up the AC joint, possibly fix a hole in the rotator cuff or reattach any pulled off tissue (R. 104). Following surgery, physical therapy and a repeat office evaluation were recommended. Dr. Ciullo remarked that Plaintiff's prognosis was "good." Plaintiff's medical history indicates his chief complaint was pain, aching and soreness in the right shoulder (R. 109). Pain was "highest after unusual activity (3)" and made worse by rest and regular work as a truck driver. Neurontin helped his pain. His shoulder mobility was unchanged and the shoulder appeared normal with no swelling. Plaintiff has no problems, using his back pocket, with rectal hygiene, washing under the opposite underarm or eating with an utensil (R. 110). Plaintiff was mildly compromised with combing hair, using his arm/hand at shoulder level, carrying 10-15 pounds,

dressing, sleeping on shoulder, pulling and throwing. Notes indicated that Plaintiff was unable to work at his job as a truck driver, but Plaintiff still played "the same sports as before, but with lower performance and is active but with different sports." His jogging running and basketball have been affected by Plaintiff's right shoulder problem (R. 110), though Plaintiff's March 30, 2004, DDS Functional Report indicates he no longer can play basketball (R. 65). Plaintiff also suffered from arthritis (wrists, hands and knees), bone or joint infection (left wrist) and elbow tendinitis (R. 111).

On January 12, 2004, Dr. Levin completed an "Attending Physician's Statement" for Plaintiff (R. 155). The one page form asked that the physician "check the box that best describes the employee's disability" (R. 155). Dr. Levin checked two boxes indicating that the Plaintiff "cannot do any work, including light sedentary work" and "cannot do any work for which his/her skills or special training would qualify him/her." Dr. Levin indicated that Plaintiff has been disabled since July 8, 2003, and opined that Plaintiff will "never" be able to return to work.

On February 3, 2004, Thomas H. Beird, M.D., performed right, carpal tunnel release on Plaintiff (R. 136-37). Dr. Beird noted that Plaintiff presented with the "classic constellation of signs and symptoms associated with compression of the median nerve at the wrist, having undergone prior failed conservative management with anti-inflammatory medication and splint immobilization (R. 136).

On March 17, 2004, Dr. Beird noted that while Plaintiff complained of left wrist pain he would not suggest operating on the wrist to improve the bone at the expense of symptoms and function (R. 133). Dr. Beird remarked that the right hand was doing well, and decompression was planned.

On April 13, 2004, Dr. Beird performed surgery to address a tender locking deformity to the affected the right ring and little finger (stenosing tenosynovitis) without complications (R. 134-35). Range of motion for the cervical spine and right shoulder was restricted, but was normal for the lumbar spine and left shoulder (R. 143).

On May 24, 2004, Dr. Beird remarked that Plaintiff's numbness is better except for "the radial distribution of the median nerve to right digit (R. 156). Locking has dissipated, pilar pain is resolving and pain on the left side should do similarly well.

On July 6, 2004, Neil A. Friedman, M.D., examined Plaintiff for the State of Michigan's Disability Examiner (R. 138-144). Noting Plaintiff's two hand surgeries, Dr. Friedman indicated that Plaintiff had no problems standing, sitting, stooping, carrying, pushing, pulling, buttoning clothes, tying shoes, dressing/undressing, dialing the phone, picking up coins/pencils, writing, squatting, getting on/off the examining table, adiadochiokinesis, finger to finger, finger to nose or heel to shin (R. 141). Only his right internal shoulder rotation and his cervical extension and flexion were significantly limited (R. 143). Reflexes of affected extremity were normal.[1]

A Physical Residual Functional Capacity Assessment of Plaintiff was completed by a state agency physician on July 19, 2004 (R. 145-52). This references the two hand surgeries noting Plaintiff was to have a right shoulder surgery in September 2004 apparently to be performed by Dr. Ciullo as suggested in November of 2003. The exertional limitations indicate that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk 6 hours in a workday and had unlimited pushing and pulling (R. 146). Plaintiff had no postural,

---

[1] The test results do not indicate whether ulnar, Hoffman's or Babinski tests were normal or absent. As such, the chart is read to mean that those tests were not conducted.

manipulative, visual or communicative limitations (R. 147-49). The examiner noted that Plaintiff played golf 2-3 times a month and cards, pool and dominos (R. 150). The sole environmental limitation was that Plaintiff must avoid concentrated exposure to vibration (R. 149). The reviewer stated that Plaintiff's allegations were only partially consistent with the medical evidence review, although the difficulty in assessing the discomfort level was noted.

Dr. Levin noted on November 29, 2004, that Plaintiff's right shoulder abduction is roughly 120 degrees past the midline, with some mild weakness of abduction. His triceps weakness was noted at 4/5. Plaintiff has tarsal tunnel syndrome, carpal tunnel syndrome, C7 radiculopathy and right rotator cuff tendinopathy, status post surgery (R. 154). Plaintiff's prescriptions for Ultracet and Nexium were renewed.

On December 7, 2004, Dr. Beird noted that Plaintiff's left hand was still a source of difficulty with marked pain at the base of the thumb (R. 156). He had positive bilateral Tinel's and Phalen worse in the left hand. Treatment options, including thumb and wrist releases, were discussed.

While there are no records of Plaintiff's September 2004 shoulder surgery, he was seen three months post surgery by Dr. Ciullo who described the procedure as "thermal capsular shift, subacromial decompression, Mumford procedure os acromiale resection" (R. 158). While he still had a little popping on internal/external rotation, rubber band exercises, his range of motion was only limited 15 degrees.

On December 9, 2004, Dr. Ciullo saw Plaintiff 3 months status post thermal capsular shift. Examination revealed decreased forward flexion and external rotation of 15° of forward flection and external rotation and he could reach to the L1 level. His supraspinatus strength was

4 ½ our of 5 and his recovery was ahead of schedule.  X-rays were normal post operative films..

On March 1, 2005, Cr. Ciullo noted that Plaintiff had resumed therapy which had been delayed as his wife had contracted with viral meningitis (R. 157).  Examination now revealed only a lack of 5 degree of forward flexion, 3 degree external rotations.  Supraspinatus, infraspinatus and subscapularis strength were deemed normal at 5 of 5.  There were no restrictions placed on his physical therapy, his activity was to be increased as tolerated, and follow up was on an as needed basis."

Dr. Levin, on September 13, 2006, completed a Medical Source Statement (Physical) indicating that Plaintiff can occasionally lift 10 pounds, frequently lift/carry less than 10 pounds, stand/walk for 2 hours and sit continuously (while alternating positions) for six hours (R. 159). Dr. Levin estimated that Plaintiff's condition would disrupt 40-80 hours of work each month (R. 160).

3. ***Vocational Evidence***

Vocational expert ("VE") Mary Williams characterized Plaintiff's past work as a material handler as medium, unskilled; his work as a job setter heavy, semi-skilled and the truck operator position as medium, semi-skilled (R. 189).

ALJ Fina asked VE Williams a hypothetical question assuming someone of the Plaintiff's age, education and the residual functional capacity ("RFC") with the following restrictions: performing light work involving lifting up to 20 pounds; lift of carry up to 10 pounds frequently; stand or walk for six hours of the workday; and the following limitations: occasional reaching overhead with the dominant arm, occasional gross manipulation, occasional fine manipulation of

objects no smaller than a pen and avoiding excessive vibration (R. 189). Could such a person perform Plaintiff's past work?

VE Williams stated that such a person could not perform Plaintiff's prior jobs and that transferability of skills would not be an issue (R. 189-90). The ALJ then asked if there would be jobs in the region or national economy which such a person could perform. VE Williams said that such a person could work as an usher/ticket taker (4,400 jobs locally and 133,00 nationally), as a transportation attendant (1,300 local and 39,600 national jobs) and as a security guard (18,400 local and 55,000 national jobs) (R. 190).

ALJ Fina asked VE Williams a second hypothetical question assuming someone of the Plaintiff's age, education, work experience and skill who is able to perform sedentary work (lifting up to 10 pounds occasionally); stand or walk for up to two hours, sit for up to six hours; and with the following restrictions: occasional overhead reaching, occasional gross manipulation, occasional fine manipulation of items no smaller than a ballpoint pen and avoiding concentrated exposure to excessive vibration (R. 191). Would there be jobs that such a person could perform?

VE Williams replied that such a person could work as a surveillance system monitor (1,500 local and 13,000 national jobs), information clerk (13,400 local and 402,000 national jobs), and telemarketer (5,300 local and 306,000 national jobs). Such jobs permit one absence a month, and allow for two 15 minute breaks and a half hour lunch break. Exceeding these break limits would eliminate the possibility of employment.

Plaintiff's counsel asked no questions of VE Williams, but did express an intention to argue disability due to restrictions on absences and breaks (R. 192). Counsel stated that ALJ

Fina's questions to VE Williams did not address Plaintiff's testimony that he needed to sit with his feet elevated to waist level for 3 to 4 hours each day and that he needed to nap daily for up to 2 hours.

### 4. ALJ Fina's Decision

ALJ Fina found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2008, and has not engaged in substantial gainful activity since July 7, 2003, the alleged onset date (R. 20). Plaintiff has "severe" impairments of bilateral carpal tunnel syndrome with right release, tarsal tunnel syndrome on the left, right shoulder and acromioclavicular joint arthritis, subacromial impingement and C7 radiculopathy, but none of these impairments alone or in combination equals any impairment listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.

ALJ Fina determined that Plaintiff has the residual functional capacity to perform a restricted range of light work, and is able to occasionally handle objects utilizing both gross and fine manipulation of objects no smaller than a ballpoint pen (R. 21). Plaintiff is unable to perform the requirements of his past relevant work and has no transferable skills (R. 22). He was found able to perform a limited range of unskilled light work.

The ALJ found that Plaintiff was 45 years old on the alleged disability onset date which makes him a younger individual per 20 C.F.R. 404.1563. Transferability of jobs skills was not material to the disability determination because the Medical-Vocational Rules (specifically Rule 202.21) support a finding that Plaintiff is not disabled whether or not Plaintiff has transferable job skills. Considering Plaintiff's age, education, work experience and RFC, ALJ Fina

determined that there exist jobs in significant numbers that Plaintiff can perform, although he referenced the sedentary jobs identified by VE Williams, not several thousand the light level jobs she also identified (R. 23 & R. 190-91).

Based on the testimony of VE Williams, ALJ Fina found that Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of decision (R. 23).

## II.     ANALYSIS

## A.     <u>Standards of Review</u>

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately

describes Plaintiff in all significant, relevant respects.[2]  A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

## B.    Factual Analysis

Plaintiff asserts that ALJ Fina erred by (1) forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments (Dkt. # 10, p. 6).  This inaccurate hypothetical was due to the ALJ's errors in assessing Plaintiff's credibility and Dr. Levin's assessment.

### 1.    *Proper Use of Treating Physicians' Opinions*

It is well established that the findings and opinions of treating physicians are entitled to substantial weight.  The case law in this circuit has stated that if adequately supported by objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law.[3]  The administrative decision could reject a properly supported treating physician's

---

[2] *See, e.g.*, *Varley v.  Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir.  1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v.  Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir.  1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v.  Heckler*, 810 F.2d 786, 790 (8th Cir.  1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinburger*, 514 F.2d 293, 294 (6th Cir.  1975); *Noe v.  Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

[3]*See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

In the present case, the ALJ was required to treat with special significance Plaintiff's medically determinable impairment (R. 21). Indeed, ALJ Fina adopted these impairments in making his determination (R. 20-23). Plaintiff argues that the ALJ was also required to give deferential weight to Dr. Levin's observation that Plaintiff was "disabled" and would never be able to work again (R. 155).[4]

ALJ Fina considered Dr. Levin's diagnosis and his vocational opinions noting that the doctor "did not give any reasons for his conclusion" which was "not support by any objective evidence." Nearly two years after his assessment that he would never work again, Dr. Levin noted that Plaintiff could occasionally lift 10 pounds, frequently lift/carry less than 10 pounds, stand/walk for 2 hours and sit continuously (while alternating) for six hours (R. 159). Far from precluding work, these restrictions are similar to the ones used by ALJ Fina in his second hypothetical. Dr. Levin also remarked that Plaintiff would be absent from work 40-80 hours per month, and while this is a significant absence it is a far cry from his prior assertion that Plaintiff would "never" work again. Nothing in Dr. Levin's report specifically rejects the sedentary job restrictions utilized in the second hypothetical provided to VE Williams.

_____

[4]Determination that an individual is disabled is for the discretion of the Commissioner. 20 C.F.R.§ 404.1527(e)(1); *Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 800 (6th Cir. 2004)(A treating physician's conclusory statement that a claimant is disabled is not controlling because the ultimate determination of whether a claimant is disabled rests with the Commissioner.); *Wallace,* 367 F. Supp.2d at 1133. *See* 20 C.F.R. § 416.927(d) (providing that poorly supported opinions are entitled to little weight); *Bogle, v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993) ("[T]reating physician's opinions ... receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").

The ALJ also noted that Plaintiff's other treating physician, Dr. Ciullo, "opined on March 1, 2005, that the claimant had no restrictions" (R. 22). While Dr. Ciullo may have been referring to no restrictions on Plaintiff's physical therapy, his two follow up examinations following Plaintiff's September 2004 shoulder surgery show a significant improvement in range of motion and strength. While not treating or discussing Plaintiff's hand limitations, Dr. Ciullo's reports do not suggest a totally disabled individual as Dr. Levin asserts without explanation. ALJ Fina was permitted to give greater weight to Dr. Ciullo's analysis than to Dr. Levin's, particularly where it was consistent with the findings of Dr. Friedman and the state agency's other consulting physician, both of whom considered Plaintiff's condition prior to his September 2004 shoulder surgery which apparently improved Plaintiff's condition further. The July 19, 2004, Physical Residual Functional Capacity Assessment of Plaintiff indicated that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk 6 hours in a workday and had unlimited pushing and pulling (R. 138-52). The Assessment also determined that Plaintiff had no postural, manipulative, visual or communicative limitations, and the only environmental limitation was that Plaintiff must avoid concentrated exposure to vibration (R. 147-49).

The ALJ in evaluating the severity of Plaintiff's limitations considered that Plaintiff's condition has not appeared to worsen since his July 19, 2004, examination. Since the July 19 examination, Dr. Ciullo's surgery and follow up show an improvement. ALJ Fina took Plaintiff's present restrictions into account when determining that there exists a subset of work which Plaintiff could perform (R. 21). It was the opinion of Dr. Levin on total disability and Plaintiff's missing 40-80 hours of work a month that ALJ Fina rejected.

Accordingly, there is substantial evidence to uphold ALJ Fina's discounting Dr. Levin's

unsupported opinion.

**2.      ALJ Fina Properly Evaluated Plaintiff's Credibility:**

Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record.  *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion.  *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredited a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons.  S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific.  The ALJ must say more than the testimony is not credible.  *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain.  *Id*. at 1039.

ALJ Fina found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. 21).

15

The ALJ noted that Plaintiff is able to care for his personal needs, he does a little cooking, does some laundry, can lift 10 - 15 pounds and pays his bills (R. 21).[5] In this case, ALJ Fina gives little to no explanation as to why he rejects Plaintiff's credibility, and there is a substantial question whether his decision fully complies with the directives of S.S.R. 96-7p and the *Felisky* decision. Yet, his reasons for rejecting Dr. Levin's opinion on disability are sufficient, and his reliance on the opinions of Dr. Ciullo, Dr. Friedman and the other state agency consulting physician are supported by substantial evidence for reasons noted above.

Where an ALJ gives adequate reasons for rejecting a treating physician's opinion, and where it is apparent that opinion is derived from the treater fully crediting the subjective reports of his patient, logic would direct that the ALJ also has adequate reasons for rejecting the credibility of the claimant on the scope, frequency and intensity of his symptoms. Here an examining physician, Dr. Friedman, a treating physician, Dr. Ciullo, and a non-examining consultant have provided evidence consistent with ALJ Fina's rejection of the severity of Plaintiff's symptoms. ALJ Fina specifically notes that he gave "great weight to the opinion of the State agency examiner who reviewed the record on July 19, 2004, and found that the claimant had the residual functional capacity for a restricted range of light work" (R. 22 referring to R. 145-50). As noted above, that examiner noted that Plaintiff played golf 2-3 times a month and pool which surely are evidence inconsistent with Plaintiff not being able to perform the restricted ranges of light and sedentary jobs ALJ Fina found (R. 150 & R. 68). Here again – as a matter of logic – where an ALJ states that he credits the opinion of some source, and that source

---

[5] With regard to paying bills, the record does not suggest that Plaintiff pays his bills as ALJ Fina asserts, but rather Plaintiff testified that he collects the bills from the tenants of his two rental properties (R. 180). ALJ Fina also erroneously claims that Plaintiff lives alone (R. 21, Cf. R. 64).

states specific facts in the record that support the opinion, the ALJ should be credited with those underlying facts which the source identifies as facts supporting the ALJ's finding – here, the ALJ's finding that he discounts the Plaintiff's credibility.

While the Commissioner's brief cannot redeem a fatally deficient ALJ opinion, ALJ Fina's credibility finding has derivative factual support in the record as discussed above in his pointing to the opinions and reports of three physicians. Defendant's analysis of the record in its motion for summary judgment further bolsters ALJ Fina's assertion that Plaintiff's claims are not entirely credible. Plaintiff testified that he naps for 1 ½ to 2 hours daily, that his medication makes him drowsy and that he sits for 3 to 4 hours daily with his feet elevated (Dkt. # 10, p. 18). There is also no indication that Plaintiff's medication caused drowsiness. Dr. Levin renewed Plaintiff's prescriptions (R. 154), and at no time were concerns about drowsiness raised. However, ALJ Fina fails to raise these issues. While the ALJ's decision would have been improved by a more thorough and extensive analysis of the record supporting his credibility finding, on this record a reasonable ALJ could find that Plaintiff was not entirely credible and thus discount Plaintiff's testimony.

### 3. *Inaccurate Hypothetical:*

ALJ Fina found that Plaintiff has the RFC to perform a limited range of light work (R. 21) noting that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations" (R. 23). ALJ Fina addressed those limitations by posing two hypothetical questions to VE Williams. The first hypothetical referenced "light" work and the second referenced "sedentary work" (R. 189, 191). In his decision, ALJ Fina referenced Plaintiff's light work restrictions but the referred to the sedentary

jobs which VE believed Plaintiff could perform: surveillance system monitor (1,500 local and

13,000 national jobs), information clerk (13,400 local and 402,000 national jobs), and

telemarketer (5,300 local and 306,000 national jobs).

In light of this discrepancy, Plaintiff asserts that the ALJ's determination is in error (Dkt.

# 10, p. 8).  Regardless, such error is harmless.  *See* ADMLP § 10.7 (harmless error may be

found where correction of the agency's failure will not affect the legitimacy of the outcome.).  As

noted in *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) (citing *Clifton v. Chater*,

79 F.3d 1007, 1009 (10th Cir.1996) and  *Allen v. Barnhart,* 357 F.3d 1140, 1145 (10th Cir.2004),

harmless error analysis is to be applied cautiously in the administrative review setting,  but it

"'nevertheless may be appropriate to supply a missing dispositive finding . . . where, based on

material the ALJ did at least consider (just not properly), we could confidently say that no

reasonable administrative factfinder, following the correct analysis, could have resolved the

factual matter in any other way.' "  ALJ Fina's first hypothetical addressed light work, and VE

Williams found a significant number of jobs which such a hypothetical person could perform in

both the local and national job markets (R. 189).  Had ALJ Fina referred to those 18,400 light

exertional jobs in the regional economy, there would be no error. The second hypothetical

addressed sedentary work which VE Williams again found in significant numbers within the

local and national job markets (R. 191).  The ALJ determined that both of the categories of jobs

provided by the VE could be performed by an individual such as Plaintiff.[6]  Assuming that the

ALJ's hypothetical questions accurately describe Plaintiff, there was no error in only citing the

---

[6] ALJ Fina reasonably relied on the July 19, 2004, examination which suggested that
Plaintiff could perform the work referenced in the first hypothetical.

18

sedentary jobs in his decision.[7]   The reason is that even if Plaintiff were found to be limited to sedentary work only, Grid listing 201.19 would still direct a finding of "not disabled" and an ALJ could find Plaintiff not disabled based on the sedentary jobs identified by ALJ Fina.

A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms. While the ALJ is not required provide a verbatim recitation of the medical findings, the hypothetical question must adequately reflect those limitations.  To meet the burden of showing that Plaintiff could perform work  that is available in the national or regional economy at the fifth step in the sequential evaluation, the Commissioner must make a finding "supported by substantial evidence that [he] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [his] individual physical and mental impairments.'" *Id.*  (citations omitted).

Here Plaintiff was found to have "severe" impairments of bilateral carpal tunnel syndrome with right release, tarsal tunnel syndrome on the left, right shoulder and acromioclavicular joint arthritis, subacromial impingement and C7 radiculopathy.   In his hypothetical, ALJ Fina translated Plaintiff's limitations into work place restrictions.  Plaintiff's attorney had ample opportunity to ask further questions of the VE but asked none.

The record establishes that Plaintiff was diagnosed with carpal tunnel syndrome fifteen

_____

[7] Assuming *arguendo* that only the second, more restricted, hypothetical was accurate, there is no error as these are the sorts of jobs which ALJ Fina referenced.  There would be no merit in remanding the ALJ's decision simply because he stated that relevant jobs were "light" when in fact he meant to say that they were "sedentary."

years prior to his 2003 visit with Dr. Levin, yet he was able to work, albeit with some restrictions, for well over a decade with that pain. In fact, Plaintiff's performed a job that required lifting an amount greater than what he was supposed to lift after his initial diagnosis of carpal tunnel syndrome.

The record showed that Plaintiff's range of motion in his shoulder increased following surgery in September 2004 (R. 157). Plaintiff has neither asserted or medically demonstrated that his shoulder or hand pain had worsened and thereby limited his ability to work. In fact, the medical record in this case is relatively thin on demonstrating that Plaintiff's problems were worsening or were sufficiently serious as to require anything more than regular medical review. ALJ Fina adequately considered Plaintiff's claims of pain in his hypothetical. VE Williams responded to this detailed hypothetical, finding that Plaintiff could work as a surveillance system monitor (1,500 local and 13,000 national jobs), information clerk (13,400 local and 402,000 national jobs), and telemarketer (5,300 local and 306,000 national jobs). Because ALJ Fina adequately addressed all of Plaintiff's exertional limitations, his hypothetical question is legally adequate, and the VE William's response upon which the ALJ relies, is sufficient evidence to uphold a denial of disability benefits.

### III.    RECOMMENDATION

For the reasons stated above, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's motion be **DENIED**. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United*

*States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Note: any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


DATED: May 21, 2008                              s/ Steven D. Pepe
Ann Arbor, MI                                    STEVEN D. PEPE
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the

attorneys and/or parties of record by electronic means or U.S. Mail on May 21, 2008.


s/ Alissa Greer_____
Case Manager to Magistrate
Judge Steven D. Pepe
(734) 741-2298